1
2
3
4
5

Dana J. Oliver, Esq. (SBN: 291082)
dana@danaoliverlaw.com
OLIVER LAW CENTER, INC.
8780 19th Street #559
Rancho Cucamonga, CA 91701
Telephone:  (855)384-3262
Facsimile:  (888)570-2021

6
7

Attorney for Plaintiff and Putative Class
Additional Attorneys on Signature Page

8
9

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MIRYAM ABITBOL, individually and on behalf of all others similarly situated, | Case No. |
| | 2:24-cv-08132-FLA-BFM |
| *Plaintiff*, | |
| | **MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| *v.* | |
| CURRENT ENERGY LLC | |
| AND | |
| KEVIN ADAMS | **Hearing** |
| | **Date: January 31, 2025** |
| *Defendants*. | **Time: 1:30 PM** |
| | **Courtroom: 6B** |
| | **Hon. Fernando L. Aenlle-Rocha** |
| | **Complaint Served: Sept 26, 2024** |
| | **Trial Date: None Set** |

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Table of Contents

Introduction ................................................................................................5

Background ................................................................................................6

Legal Standard ...........................................................................................6

Argument...................................................................................................7

A.  *Plaintiff pleads sufficient facts, including spatial and temporal proximity, allowing this Court to draw the logical inference that Defendants directly placed the illegal calls at issue using a fake name at the outset.*....................................7

B.  *Defendants' motion should further be denied because it misstates the Plaintiff's burden of proving direct or vicarious liability at the pleadings stage.* 14

C.  *Even if Plaintiff inadequately pleads direct liability, she still more than adequately pleads vicarious liability.*.................................................22

Conclusion ...............................................................................................31

L.R. 11-6.2 CERTIFICATE OF COMPLIANCE .................................................32

CERTIFICATE OF SERVICE .......................................................................32

# Table of Authorities

**Cases**

*1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229 (10th Cir. 2013) ...............22

*Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.*, 2018 U.S. Dist. LEXIS 132078 (N.D. Cal. 2018) ...........................................................................30

*Abramson v. Josco Energy USA, LLC*, No. 2:21-cv-1322, 2022 U.S. Dist. LEXIS 237792 (W.D. Pa. Aug. 1, 2022).........................................................18

*Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817 (N.D. Ill. 2016) 28, 29, 30

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................7

*Barnes v. Sunpower Corp.*, No. 22-cv-04299-TLT, 2023 U.S. Dist. LEXIS 51033 (N.D. Cal. Mar. 16, 2023) .....................................................................21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).......................................................6

*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) .........................................23

*Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*, No. 14-CV-8467 (JMF), 2016 U.S. Dist. LEXIS 133299 (S.D.N.Y. Sep. 28, 2016) ..........................................23

*Consol. Grain & Barge, Inc. v. Anny*, No. CIV.A. 11-2204, 2013 WL 486687 (E.D. La. Feb. 6, 2013) ...........................................................................9

*Cunningham v. Cap. Advance Sols., LLC*, No. 17-13050 (FLW), 2018 U.S. Dist.
    LEXIS 197590 (D.N.J. Nov. 20, 2018) ................................................................24
*Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187
    (M.D. Tenn. 2017) ........................................................................................ 19, 25
*Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988 (N.D. Ill. 2016) ......... 24, 26
*Ewing v. Encor Solar*, 2019 U.S. Dist. LEXIS 10270 (S.D. Cal. Jan. 22, 2019) ....20
*Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019) ....................................20
*Harrington v. Roundpoint Mortg. Servicing Corp.*, 2017 U.S. Dist. LEXIS 55023
    (M.D. Fla. Apr. 10, 2017) ...................................................................................26
*Hayhurst v. Keller Williams Realty, Inc.*, No. 1:19CV657, 2020 U.S. Dist. LEXIS
    128877 (M.D.N.C. July 22, 2020) .......................................................... 25, 28, 29
*Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068 (9th Cir. 2019)  28, 29
*In re Dish Network*, 28 F.C.C. Rcd. 6574 (2013) .......................................... 12, 23
*Jones v. Mut. of Omaha Ins. Co.*, Civil Action No. ELH-22-905, 2022 U.S. Dist.
    LEXIS 203313 (D. Md. Nov. 7, 2022) ..................................................................19
*Jones v. Royal Admin. Servs.*, 887 F.3d 443 (9th Cir. 2018) ....................................21
*Keim v. ADF Midatlantic, LLC,* 2015 WL 11713593 (S.D. Fl. 2015) ....................30
*Klein v. Just Energy Grp., Inc.*, No. 14-1050, 2016 U.S. Dist. LEXIS 84447 (W.D.
    Pa. June 29, 2016) ...............................................................................................23
*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) ...........................23
*Lansdown v. Bayview Loan Servicing, LLC*, No. 22-CV-00763-TSH, 2023 WL
    2934932 (N.D. Cal. Apr. 12, 2023) ........................................................................9
*Lucas v. Telemarketer Calling From (407) 476-5670 & Other Tel. Numbers*, No.
    1:12-CV-630, 2014 WL 1119594 (S.D. Ohio Mar. 20, 2014) .............................13
*Maryland v. Universal Elections, Inc.*, 729 F.3d 370 (4th Cir. 2013) .....................13
*Mauer v. Am. Intercontinental Univ., Inc.*, 2016 U.S. Dist. LEXIS 120451 (N.D.
    Ill. Sep. 7, 2016) .................................................................................................24
*Meyer v. Holley*, 537 U.S. 280 (2003) ....................................................................23
*n re Dialing Servs., LLC*, 29 F.C.C. Rcd. 5537 (2014) ..........................................12
*Panacci v. A1 Solar Power, Inc.,* No. 15-cv-00532-JCS, 2015 U.S. Dist. LEXIS
    77294 (N.D. Cal. June 15, 2015)..........................................................................22
*Stemke v. Marc Jones Constr., LLC*, No. 5:21-CV-274-30PRL, 2021 WL 4340424
    (M.D. Fla. Sept. 23, 2021) ...................................................................................16
*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002) ..................................................8
*United States v. Dish Network LLC*, 256 F. Supp. 3d 810 (C.D. Ill. 2017) ...........26

**Statutes**
Fed. R. Civ. P. 12(b)(6) ........................................................................................6, 8
Fed. R. Civ. P. 8 ........................................................................................................6

**Other Authorities**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC
  Rcd. 1830 (2012) ................................................................................31

Restatement (Third) of Agency ....................................................... passim

MEMO. IN OPPN. TO DEFS.' MOT. TO DISMISS.
*Abitbol v. Current Energy*

**INTRODUCTION**

Defendants Current Energy and Kevin Adams' (Defendants)' motion to dismiss must be denied because the Plaintiff has pled sufficient facts to demonstrate their direct liability for the calls at issue. Specifically, Plaintiff has pled that she received at least two calls to her number on the same day from the same fake name "Energy Efficient." During the latter of those calls, the Plaintiff was transferred to Defendant Adams, who confirmed in subsequent correspondence with the Plaintiff that he was with Defendant Current Energy, advertised Current Energy's services, and referred to Current Energy in the collective sense. Despite these facts, Defendants shockingly claim that they had absolutely nothing to do with the calls Plaintiff received, and ask to dismiss this case. But those allegations are not merely supported by the Plaintiff's say-so; rather, they are bolstered by the aforementioned text messages, the temporal and spatial proximity with the calls, and subsequent investigation. At the pleadings stage, such allegations are plainly sufficient to give rise to an inference of direct liability, including Current Energy's joint direct liability for Mr. Adams, who it is also defending here.

As so many other courts have done in other TCPA cases involving vicarious liability and unlawful calls to cell phones on the Do Not Call Registry, this case should be allowed to proceed to discovery.

**BACKGROUND**

The Complaint in this matter was filed on September 20 against the Defendants. Defendants have filed a motion to dismiss under Rule 12(b)(6) on the specious basis that the Plaintiff has inadequately pled the Defendants' direct connection to the calls. This response follows, in which Plaintiff shows why she has stated a *prima facie* case for violations of the TCPA that must be permitted to proceed to discovery, including third party discovery on the telephone provider at issue, to better ascertain what happened, pinpoint the exact number of calls Defendants placed, and the exact nature of the relationship between Current Energy and Adams.

**LEGAL STANDARD**

The legal standard for a motion to dismiss under Rule 12(b)(6) is well-established. Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (cleaned up). The requirement that a plaintiff "show" that he is entitled to relief means that a complaint must contain sufficient factual matter, accepted as

MEMO. IN OPPN. TO DEFS.' MOT. TO DISMISS.
*Abitbol v. Current Energy*

true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016). After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Twombly*, 550 U.S. at 570.

## ARGUMENT

***A. Plaintiff pleads sufficient facts, including spatial and temporal proximity, allowing this Court to draw the logical inference that Defendants directly placed the illegal calls at issue using a fake name at the outset.***

As described above, the Court's analysis must begin and end with whether or not the Plaintiff has plausibly alleged the Defendants' involvement in the calls with sufficient specificity to give rise to the inference of direct or vicarious liability. She has done so because she has pled facts, including spatial and temporal proximity, as well as the outcome of her subsequent investigation into the calls, which sufficiently prove at the pleadings stage that Defendants directly placed the calls using a fake name, which Defendants then used for their benefit in attempting to sell the Plaintiff solar panels. (Compl. ¶ 16–22). The Plaintiff has clearly alleged

that Current Energy is liable for the conduct at issue by hiring Mr. Adams and has made allegations that support the fact that Current Energy made those calls directly through Mr. Adams as part of an *en masse* campaign, including based on Current Energy's owner's own declarations against interest, as well as text messages from two phone numbers identifying Mr. Adams and including Current Energy's website, including the statement "*we* [i.e. Current Energy] have done installations for the Van Nuys airport." (Compl. ¶ 20, 22).

The Plaintiff is entitled to rely on the Defendants' *very own representations*, as pled in the Complaint. Defendants cannot be permitted to play games and attempt to toss this case on a 12(b)(6) based on the excuse that "we didn't do it." In essence, the Defendants attempt this defense by disguising it as a challenge to the Plaintiff's allegations of direct liability at the pleadings stage. Rule 12(b)(6) is not an appropriate device for testing the truth of what is asserted in the complaint or for determining whether the plaintiff has any evidence to back up what is in the complaint. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). However, that's precisely what the Defendants attempt to do here, making a red-herring argument that the Plaintiff has failed to state a claim because she has allegedly failed to set forth facts giving rise to direct liability that the Defendants placed the calls at issue. But that's a "red herring" that begs the question "who did, then?" *See*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Consol. Grain & Barge, Inc. v. Anny*, No. CIV.A. 11-2204, 2013 WL 486687, at *6 (E.D. La. Feb. 6, 2013).

Nevertheless, the Plaintiff has met her burden of pleading facts sufficient to give rise to the inference that the Defendants placed the illegal calls at issue here. To be sure, the exact relationship between Mr. Adams and Current Energy will need to be sussed out in discovery, but it's simply inappropriate to dismiss the case here for failure to plead facts of which the Plaintiff is unaware. *See Lansdown v. Bayview Loan Servicing, LLC*, No. 22-CV-00763-TSH, 2023 WL 2934932, at *8 (N.D. Cal. Apr. 12, 2023) (holding that the existence of an agency relationship is normally a question of fact reserved for the trier of fact). Were that the case, every case where there was a dispute as to whether an employee was an employee or contractor would get tossed at the pleadings stage.

Even so, Defendants' arguments for why the Court should not credit Plaintiff's allegations that Defendants directly placed the calls using a fake name, as this Court is required to do, are tenuous at best. Defendant Current Energy unjustifiably leaps to the conclusion that, because the Plaintiff was *transferred* by the initial caller using the fake name to Mr. Adams, that some other unidentified third party must have placed the calls. This unsupported conclusion is contradicted by the Plaintiff's own pleading, where Mr. Adams "confirmed that they [i.e. "Energy Efficient"] were in fact calling from Defendant Current Energy." (Compl.

¶ 19). Defendants' version of events is also tone-deaf to the fact that Mr. Adams not only identified himself as with Current Energy, but is also *being defended jointly along with Current Energy*.

Nothing about the fact that the call was transferred to Mr. Adams, directly during the same call, means that the call was placed by some unknown third-party entity and then magically transferred to Adams for Current Energy's benefit. Regardless, there is no "affirmative identification before transfer" requirement or even an identification requirement whatsoever in the TCPA. Were that the case, any bad actor (like Defendants here) could call people incessantly using fake names like "Energy Efficient" and only identify themselves when about to sell something, thus disclaiming responsibility for the calls, despite having placed them, and despite other evidence that the calls originated from the same place.

Companies like Current Energy transfer calls internally between employees all the time, such as from a "boiler room" sales floor to a "closer," which is what Plaintiff suspects happened here. In fact, no part of the Defendants' motion so much as acknowledges this possibility, which is rendered all the more plausible because Adams stated that he was with Current Energy and thereafter texted Plaintiff confirming that fact and looking to continue selling Current Energy products and services. Those services also happen to be the exact same thing pitched at the outset from "Energy Efficient," and prove that the unauthorized calls

were placed by Defendants. At least part of this confusion stems from the Defendants' misconstruing that the caller ID read "Energy Efficient" (which is untrue), and that the calls came from a "another company" or "telemarketing service." But those allegations appear nowhere in the Plaintiff's complaint. Rather, based on the indicia of the calls and the other evidence the Plaintiff gathered, the Plaintiff alleges that the Defendants *directly* placed the calls at issue. Defendants' contention otherwise stretches the boundaries of logic and common sense.

Defendants' additional attempts to distance themselves from the first call from "Energy Efficient" fare no better. The Plaintiff stated that she was not interested on the first call but received the second call regardless, the same day, from the same fake name, selling the same products. On that second call, she was directly transferred to Mr. Adams, who tried to sell her Current Energy's products and services. Mr. Adams then continued to do so via text messaging. The Plaintiff's pleadings allow the court to draw the eminently logical inference that the Defendants were responsible for both such calls pled in the Complaint.

Both calls came in on *the same day* from the *same fake name*. Defendants' response to these well-pled factual allegations, that the Defendants *deliberately* lied about who they were *to conceal their identity*, turns this logic on its head, and takes advantage of the fact they did so to cast unjustified doubt on the Plaintiff's well pled allegations at the pleadings stage. Defendants lied about who they were

and are now taking advantage of their own misconduct to attempt to toss this case at the pleadings stage. And despite the Defendants taking issue with the fact that the Plaintiff caught them red-handed during the second call, the Defendants completely ignore the spatial and temporal proximity between the first call and the same fake name that indicates that both originated from the same source–the Defendants.

And, as has been explained, the Defendants' theory of the case that the illegal calls were not placed by them because the second call was transferred to Mr. Adams with Current Energy, who the Plaintiff correctly identified, runs contrary to well-established TCPA case law. The TCPA does not require a person to physically initiate or dial a call in order to be directly liable for the call; indeed, a caller can initiate the call through another if they "take the steps necessary to physically place a telephone call." *In re Dish Network*, 28 F.C.C. Rcd. 6574, 6583 (2013). But even *if* assuming, *arguendo*, Defendants hired some marketing company (that they will never admit to using) to place the calls which then transferred interested individuals to the Defendants, the FCC has already clarified that this, and several other types of conduct, including securing a telephone connection, providing reports, and contracting for call center services, are all actions which are sufficient to "initiate" a call and impose direct liability. *In re Dialing Servs., LLC*, 29 F.C.C. Rcd. 5537 (2014) (citing *Maryland v. Universal*

*Elections, Inc.*, 729 F.3d 370, 377 (4th Cir. 2013) and *Lucas v. Telemarketer Calling From (407) 476-5670 & Other Tel. Numbers*, No. 1:12-CV-630, 2014 WL 1119594, at *10 (S.D. Ohio Mar. 20, 2014) for the proposition that "in evaluating the TCPA liability of third parties who engage robocalling services, courts have assumed liability of the latter for any illegal calls made using the service, explaining that 'the language of the Act indicates that it is intended to apply to the individuals who use the autodialing systems that place calls, and not just to the autodialing services themselves.'").

Of course, the exact reason for why the call was transferred through what appears to be multiple internal departments remains to be explored in discovery, but it stretches credulity to think that Current Energy and Mr. Adams would have such ready access to the Plaintiff's information so as to be able to continue a sales pitch initiated by some uninvolved third-party as the Defendant claims. Rather, it is a far more reasonable inference to believe that the call was placed by Defendant as an initial matter simply transferred from one employee to another internally using some sort of system designed for this very purpose and specialization.

The Court must look to the totality of the circumstances here and understand that Defendants attempted to put every conceivable hurdle to prevent themselves from being identified as the source of the illegal calls. This behavior is no different than the common conduct of other individuals in all sorts of criminal enterprises

which take steps to hide their involvement; this case is no different and the

Defendants should not be rewarded in their obfuscation attempts. The Plaintiff

understood these hurdles and investigated the calls, which ultimately identified the

Defendants. The Plaintiff alleged that the Defendants here *explicitly designed* their

telephone marketing strategy in such a way so as to cast doubt on the Plaintiff's

allegations when they get sued and to take advantage of their own misconduct.

Putting every conceivable hurdle in the face of the Plaintiff investigating the

source of the illegal contacts she received is par for the course for the Defendants.

The Defendants cannot now cry foul given that the Plaintiff has caught their hand

in the cookie jar.

### B. Defendants' motion should further be denied because it misstates the Plaintiff's burden of proving direct or vicarious liability at the pleadings stage.

The Defendant's motion also misstates the Plaintiff's burden at the pleadings

stage entirely. Based on the facts pled in the notice-pleading of the Plaintiff's

complaint, as further bolstered by additional evidence pled therein, it is fair for this

Court to infer that Defendants are liable for the conduct alleged to permit this

matter to proceed to discovery. The fact that Defendants were affirmatively

identified during one of the calls is alone sufficient to at least entitle the Plaintiff to

discovery, minimally, as to what other calls the Defendant made and how the

Defendant came to get the Plaintiff's number and call it to conduct a sales pitch.

Discovery can unquestionably extend to all the calls Plaintiff received bearing the

same temporal and spatial indicia that indicate, or at least reasonably infer, they came from the same place.

Moreover, and assuming, *arguendo*, that the Defendants did hire some marketing company to place the initial calls at issue, as they claim (without so much as identifying this purported third party), this Court should not hold that Defendants had no involvement in and are not at the very least vicariously liable for calls admittedly transferred to Mr. Adams, who admitted that he is with Current Energy. The Plaintiff has pled more than adequate facts demonstrating, if not direct liability, that such a vicarious liability agency relationship exists, thus permitting the Plaintiff to be entitled to discovery on this point and into the universe of calls placed to her.

Neither the Defendants' general denials here nor citation to off-base case law suffice to show that there is some question as to whether or not Defendants may be directly or vicariously liable for at the calling conduct alleged. This Court cannot credit the Defendants' simple denial of involvement, particularly because the Defendants' very own contentions themselves are contradicted by the evidence pled in the complaint. Moreover, even if that was the standard (which it is not), it doesn't matter that the callers used fake names, nor do differences in call outcomes at all matter for pleadings purposes. The calls were evidently placed by the same entity and were directly connected to the Defendants. Those facts, as well as the

other spatial, temporal, and other proximity cues link the unauthorized calls, at least at the pleadings stage.

Requiring a putative TCPA plaintiff to allege more than basic facts giving rise to liability, such as requiring the entity be disclosed by name at the outset of an illegal telemarketing call or pleading intricate details linking calls, which were explicitly designed to be as difficult to trace, as the Defendant seems to require, would eviscerate the TCPA's protection and would simply allow defendants to run rampant with all manner of anonymous and unidentified calls. Indeed, although identification of a caller is a legal requirement, Defendants did not lawfully identify themselves with their real names until they thought they had hooked a potentially interested customer. Neither Current Energy, Mr. Adams, nor the vast majority of illegal telemarketers abide by the law in this regard and instead use fake, generic names on the initial sales pitch because disclosing their true identity at the outset would cause bad will for their brand and generate a multitude of public consumer complaints. In litigation that affirmatively identifies them as the bad actors, like here, they then play dumb and claim that they have no connection with such falsely, and illegally, named entities and callers.

Other courts have rejected nearly identical tactics. For example, in *Stemke v. Marc Jones Constr., LLC*, No. 5:21-CV-274-30PRL, 2021 WL 4340424, at *2–3 (M.D. Fla. Sept. 23, 2021), a sister court stated in a case on all fours and

admittedly weaker facts than this one:

> Sunpro's motion to dismiss goes beyond the pleading to challenge the merits of the alleged facts. Indeed, the crux of Sunpro's motion questions Plaintiff's allegations that Sunpro placed the subject calls.

> For example, Sunpro argues that Plaintiff fails to "support" a plausible inference that Sunpro is directly or vicariously liable for the calls Plaintiff received because she does not allege facts that associate Sunpro to the calls allegedly at issue. But a review of the Amended Complaint belies this argument—Plaintiff alleges several times that she or her attorneys confirmed that Sunpro placed the subject calls. Plaintiff even includes the phone numbers and the dates she received the calls. To the extent Sunpro disputes that it directly placed the calls, Sunpro may take discovery on this matter and argue the issue at the dispositive motion stage.

Taking all factual inferences in the Plaintiff's favor, as the Court must do now, the

Plaintiff's allegations are sufficient. As Judge St. Eve, prior to being appointed by

President Trump to the Seventh Circuit Court of Appeals, held in a TCPA case

denying a similar motion to dismiss:

> Sempris does not dispute that Quality initiated four calls to Toney in December 2012, but contends that Toney "cannot plausibly allege that the three unanswered calls she purportedly received were initiated by Quality for the purpose of marketing Sempris's Budget Savers membership program, because Toney does not allege--and cannot allege--that she has any personal knowledge of what the content of those calls would have been." . . . Sempris submits that Quality "just as easily could have been calling Toney to market the goods or services of another company it contracts with, for the exclusive purpose of confirming Toney's Stompeez order, or for a different purpose altogether" and that "Toney's assertion that that Quality made the three unanswered calls for the purpose of marketing Budget Savers is nothing more than rank speculation."

> The court disagrees. Toney has alleged that she received and answered a call from Quality in which the caller tried to sell her a Budget Savers membership the day after she received three unanswered calls from

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Quality. The content and timing of the fourth call allows the court to draw a reasonable inference that Quality made the first three calls to market Sempris's services.

*Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014) (cleaned up). The same reasonable inference can be made here, as Ms. Abitbol received two calls with the same fake name using the same exact scripting on behalf of the Defendants on the same day, including later identifying the Defendants through the individual to which Plaintiff was transferred.

The Defendants' standard provides a perverse incentive for a caller to conceal their identity by making it impossible for any plaintiff to prove a claim against the defendant at the pleadings stage based on a lack of information and evidence. Luckily for consumers who receive unwanted calls, this is not the standard. *Abramson v. Josco Energy USA, LLC*, No. 2:21-cv-1322, 2022 U.S. Dist. LEXIS 237792, at *6 (W.D. Pa. Aug. 1, 2022) ("Defendant might dispute those facts, but as now alleged, they go beyond formulaically reciting the elements of Plaintiff's cause of action, and the Court must take them as true at this early stage in the litigation.").

Discovery will also permit the Plaintiff to uncover any additional third parties which *may* have been involved in the calls and argue as to the respective liability between themselves and Defendants. At the very least, this Court should nevertheless conclude that the facts pled here give rise to the inference of some

agency relationship and permit discovery. *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017) ("Cunningham has investigated the parties extensively, but inevitably some aspects of their relationships will only come to light in discovery."). Nor is this conclusion rendered at all different because some question exists as to whether Mr. Adams is an employee or an "independent" contractor. The District of Maryland denied a similar motion in a TCPA case in *Jones v. Mut. of Omaha Ins. Co.*, Civil Action No. ELH-22-905, 2022 U.S. Dist. LEXIS 203313 (D. Md. Nov. 7, 2022) (cleaned up), holding:

> As noted, pursuant to Rule 12(b)(6), Mutual of Omaha contends that plaintiff fails to state a claim because she does not plausibly allege that defendant is either directly or vicariously liable for the calls at issue. Although Mutual of Omaha would not be directly liable for the calls, it may be vicariously liable if an agency relationship existed between the defendant and the third party. At this juncture, Mutual of Omaha's Motion turns on whether plaintiff has adequately alleged facts sufficient to support a claim of vicarious liability. Plaintiff has made a prima facie showing of an agency relationship based on actual authority . . . plaintiff has alleged that she received calls from an unidentified third-party telemarketer hired to sell branded products of another company who had control over the telemarketer's practices with respect to selling its products. Specifically, Jones alleges that the third party "was required to promote Mutual of Omaha's products[.]" Plaintiff also alleges that during the "solicitation", Mutual of Omaha's insurance services "were promoted." *Moreover, she was then transferred to Eric Chambers, who identified himself as an employee of Mutual of Omaha. Id. ¶ 26. . . . .*

> At the motion to dismiss stage, plaintiff need only make a prima facie showing of an agency relationship. Therefore, at this stage of the proceedings, Jones need not demonstrate that Mutual of Omaha actually controlled the manner and means of the telemarketing campaign; rather, evidence of Mutual of Omaha's "'*right* to control' the campaign will suffice." Viewing the

allegations in the light most favorable to plaintiff, Jones has sufficiently alleged that Mutual of Omaha is vicariously liable based on an agency theory.

This case is nothing like the cases cited by the Defendant. In *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 960 (8th Cir. 2019), the Ninth Circuit merely addressed the propriety of a *jury instruction* that too loosely articulated direct liability under the TCPA. In fact, as the Ninth Circuit explained, and of particular relevance here, one need not plead the exact nature of the relationship between a company and the agents through which it acts:

> In the analogous context of tort law, individuals are generally liable for any torts they commit, even those committed in the scope of their employment or in their role as corporate officers. . . . Nor does the TCPA require that an officer's business be found liable before the officer may be held liable, as the defendants argued here. Simply put, "any person" who violates the TCPA may be liable.

*Id.* (cleaned up). The failure to allege the specific details of the relationship between a corporation and its employees does not cause the Plaintiff to improperly "lump defendants together." In this sense, this case is nothing like *Ewing v. Encor Solar*, where the plaintiff sued "six different defendants" for 13 calls without sufficiently identifying "the role of each defendant," as evidenced by "offering confusing allegations regarding the role each of the defendants played in the purported scheme, often using defendants' names interchangeably and switching the theory of control." 2019 U.S. Dist. LEXIS 10270, at *16–17 (S.D. Cal. Jan. 22, 2019). To the contrary, the Plaintiff here pleads a streamlined, distinct set of facts:

1
2
3
4

two violations of the TCPA for two calls that occurred on the same day, with identical scripts, and which were transferred to Mr. Adams as the salesman, thus imposing direct liability as to both calls on both Defendants.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

Nor can the Defendants find solace in the mish-mash of other cases they cite to and fail to develop in support of their contention that the Plaintiff has failed to allege even vicarious liability. *Jones v. Royal Admin. Servs*., 887 F.3d 443 (9th Cir. 2018), was a fact-based determination decided based on a full record at summary judgment. Even so, it does not stand for the proposition that there can be no vicarious liability when a call centre places calls and then transfers them to a defendant company, even if, *arguendo*, that's what happened in this case (it's not). *Contra Barnes v. Sunpower Corp.*, No. 22-cv-04299-TLT, 2023 U.S. Dist. LEXIS 51033, at *6 (N.D. Cal. Mar. 16, 2023) (dismissing case where the plaintiff did not plead direct liability, where defendant was not named on the illegal call, and only identified when the plaintiff *called the number back* and the defendant was named).

20
21
22
23
24
25
26
27
28

In *Jones*, unlike here, and after discovery on the basis of a full factual record, the Ninth Circuit held that the telemarketer must *first* pitch a Defendant's product on a call in order for that Defendant to be liable for calls based on a vicarious liability theory. *Jones*, 887 F.3d at 451. That's what happened here, and that's what didn't happen in *Jones. Jones* does not stand for the proposition, as Defendant claims, that transferring a call to a defendant in order to sell the defendant's services extinguishes

the requisite element of control. That argument runs contrary to well-established

agency law. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1250 (10th Cir.

2013) ("[T]hat certain affiliates may have worked for another advertiser at the same

time that they were working for Lens.com does not necessarily mean that they could

not have been agents of Lens.com. An agent can serve multiple principals at once,

even principals that are competing with one another.").

Relatedly, in *Panacci*, unlike here, the court dismissed the case as to a *singular*

*defendant,* with leave to amend, when the complaint only alleged that that another,

undismissed defendant, NREC's, "*intention* was to refer the Plaintiff to Defendant

A1 Solar." *Panacci v. A1 Solar Power, Inc.,* No. 15-cv-00532-JCS, 2015 U.S. Dist.

LEXIS 77294, at *20 (N.D. Cal. June 15, 2015). The Plaintiff here does not plead

the intent of some third party to refer the call or lead to the Defendant. Here, the

Plaintiff pleads that the Defendant *itself* placed the calls for its own benefit, as

confirmed through the subsequent text message conversations. That's not

intentional; that's actual. For what it's worth, the Court there also credited reports

that A1 Solar conducted marketing under the fake name of "NREC," but noted that

the plaintiff made no such assertions in the complaint, unlike here, where the

Plaintiff plainly pleads that "Energy Efficient" is simply a fake name used by the

Defendants to protect their image and ill will for their brand. *Id.*

### C. Even if Plaintiff inadequately pleads direct liability, she still more than adequately pleads vicarious liability.

MEMO. IN OPPN. TO DEFS.' MOT. TO DISMISS.
*Abitbol v. Current Energy*

"[A] party may be liable under the TCPA in accordance with tort-related vicarious liability rules," including actual authority, apparent authority, and ratification principles. *Klein v. Just Energy Grp., Inc.*, No. 14-1050, 2016 U.S. Dist. LEXIS 84447, at *27 (W.D. Pa. June 29, 2016) (citing *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016)); *see also In re Dish Network*, 28 F.C.C. Rcd. 6574, 6588 (F.C.C. 2013). "The existence of an agency relationship is a mixed question of law and fact that should generally be decided by a jury." *Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*, No. 14-CV-8467 (JMF), 2016 U.S. Dist. LEXIS 133299, at *33 (S.D.N.Y. Sep. 28, 2016) (internal quotation marks omitted); *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 660 (4th Cir. 2019) (affirming TCPA vicarious liability jury verdict).

An agency relationship "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006); *see also Krakauer*, 925 F.3d at 659-660 (stating the same and citing the Restatement). "Once such a relationship is formed, 'traditional vicarious liability rules ordinarily make principals . . . vicariously liable for acts of their agents . . . in the scope of their authority.'" *Id.* at 660 (quoting *Meyer v. Holley*, 537 U.S. 280, 285-86 (2003)). "An essential element of agency is the principal's right to control the

MEMO. IN OPPN. TO DEFS.' MOT. TO DISMISS.
*Abitbol v. Current Energy*

agent's actions", but this concept of control "embraces a wide spectrum of meanings", including "what the agent shall and shall not do, in specific or general terms." Restatement (Third) of Agency § 1.01 cmt f. "A principal's control over an agent will as a practical matter be incomplete because no agent is an automaton who mindlessly but perfectly executes commands." *Id.*

A plaintiff is required to allege a sufficient basis for any "one of the common law agency theories." *Cunningham v. Cap. Advance Sols., LLC*, No. 17-13050 (FLW), 2018 U.S. Dist. LEXIS 197590, at *17-21 (D.N.J. Nov. 20, 2018). "[A] plaintiff is not required to plead all of its evidence in the complaint in order to plausibly allege agency." *Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988, 996 (N.D. Ill. 2016) (citing *Dish Network*). A plaintiff must only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Mauer v. Am. Intercontinental Univ., Inc.*, 2016 U.S. Dist. LEXIS 120451, at *2 (N.D. Ill. Sep. 7, 2016). For TCPA claims specifically, there is a low bar to pleading vicarious liability, as a plaintiff is *not expected* to allege "facts suggesting that" the defendant: (1) "instructed" the putative agent "to make the call to" the plaintiff, (2) "had any authority over the time, means and manner of" the putative agent's solicitations, or (3) "had the ability to issue instructions … on these subjects." *Dolemba*, 213 F. Supp. 3d at 997 ("But Farmers does not suggest how Dolemba could reasonably be expected to

know those facts at this stage in the litigation. Indeed, it is likely that all of the documents and information that establish (or refute) the details of the agency relationship between Farmers and the Lombardi Agency are exclusively within the Defendants' custody and control.").

Ultimately, in this case, Plaintiff pleads robust facts giving rise to an inference that Defendants are, if not actually, at least vicariously, liable for both of Plaintiff's calls based on all three vicarious liability theories.

**Actual Authority**

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01. Actual authority may be given expressly—such as when the principal states "in very specific or detailed language" how an agent is to act—or impliedly—such as when an agent acts "in a manner in which [the] agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestation in light of the principal's objectives and other facts known to the agent." *Hayhurst v. Keller Williams Realty, Inc.*, No. 1:19CV657, 2020 U.S. Dist. LEXIS 128877, at *16 (M.D.N.C. July 22, 2020) (denying motion to dismiss in TCPA vicarious liability case); see *Cunningham*, 251 F. Supp. 3d at 1199 ("The

question of whether implied authority may have existed would require the Court to know more about the course of the parties' dealings and the generally expected course of business …."").

Actual agency "does not require the principal to specify the singular acts for which her or her authority exists as long as the acts are incidental to or reasonably necessary to accomplish what is authorized." *Harrington v. Roundpoint Mortg. Servicing Corp.*, 2017 U.S. Dist. LEXIS 55023, at *21 (M.D. Fla. Apr. 10, 2017). "The concept of scope of authority is broad. An agent has authority to act to further the principal's objectives, as the agent reasonably understands the principal's manifestations and objectives. The principal is liable for the acts of the agent to further the principal's purposes unless the agent acts entirely for the agent's benefit only." *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 923 (C.D. Ill. 2017) (citing Restatement (Third) of Agency § 2.02(1)). Thus, for a TCPA claim, a plaintiff sufficiently pleads that a defendant actual directed an agent's calls by alleging facts giving rise to an *inference* that the defendant was "involved" in the "sales practices and marketing procedures." *United States*, 256 F. Supp. at 922-923; *Dolemba*, 213 F. Supp. 3d at 997 ("Of course, these facts may not be sufficient to prove any theory of vicarious liability. They are more than sufficient, however, to entitle Dolemba to further discovery.").

Here, the Plaintiff has more than adequately pled facts giving rise to such an

inference, because, other than the fake name "Energy Efficient," the Defendants were the *only other entities* named on the calls. Moreover, the Plaintiff has pled that Defendant Adams stated that he was "with" Current Energy and that Current Energy was his company. That is more than sufficient to give rise to the inference of actual authority. These facts demonstrate the requisite control over the telemarketer to permit discovery on their relationship. And, without seeing the precise nature of the contract and agreement between Current Energy and Mr. Adams–an insurmountable hurdle at the pleadings stage–the Plaintiff nevertheless alleges a good faith inference as to the aforementioned indicia demonstrating agency. The Plaintiff has sufficiently alleged agency under an actual authority theory. Ms. Abitbol makes specific, direct allegations, as outlined above, about the nature of the relationship, including making inferences based on actual experiences and evidence. There can be no question that Defendants consented to the making telemarketing contacts for their benefit *en masse*, as to be further explored in discovery.

**Apparent Authority and Ratification**

Apparent authority "arises when a third-party reasonably believes that the [] agent had authority to act on behalf of the principal and that belief can be traced to the principal's own manifestations." *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1167–68 (D. Idaho 2011). Apparent authority can

exist even where, unlike here, a principal does not communicate directly with a consumer. *See Hayhurst*, 2020 U.S. Dist. LEXIS 128877, at *24-25 ("Although Keller Williams is not alleged to have made any statements directly to Hayhurst, it is not required to do so. Rather, its manifestations must be 'traceable' to it even if it did not make them directly to Hayhurst. And, its manifestations 'may take many forms'.").

"Ratification occurs when a principal knowingly chooses to accept the benefits of unauthorized actions an agent takes on the principal's behalf." *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 833 (N.D. Ill. 2016); Restatement (Third) of Agency § 4.01(1) (2006) cmt. d. ("Ratification does not require a pre-existing formal agency relationship."). "[R]atification may create a relationship of agency when none existed between the actor and the ratifier at the time of the act. It is necessary that the actor have acted or purported to act on behalf of the ratifier." Restatement (Third) of Agency § 4.01 cmt. b; *see Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1075 (9th Cir. 2019) (citing the Restatement and holding in a TCPA action that "ratification may create an agency relationship when none existed before the acts are 'done by an actor … who is not an agent but pretends to be.'"). To demonstrate prospective ratification, a plaintiff must show that a principal had full knowledge of all the facts, *or* was willfully ignorant of those facts, and manifested an intention to ratify the act in question, *or* that an agent

acted for a principal's benefit and the principal "fail[ed] to object or repudiate an

action." *Henderson*, 918 F.3d at 1074-75; *Aranda*, 179 F. Supp. 3d at 831.

Here, Plaintiff sufficiently pleads Defendants' vicarious liability predicated

on apparent authority and ratification theories based on the same allegations

supporting direct liability and an actual authority theory. Specifically, with regard

to *apparent* authority, it is and was reasonable for Plaintiff to believe that

Defendant Current Energy authorized Mr. Adams to sell goods on its behalf, that

Mr. Adams worked for Current Energy, and that they both authorized the calling

conduct at issue. In fact, as a result of these manifestations traceable to Defendants,

Plaintiff had and continues to have no reason to believe that anyone other than

Defendants were involved in the calls (perhaps using the fake name "Energy

Efficient") until the filing of their instant motion. *See Hayhurst*, 2020 U.S. Dist.

LEXIS 128877, at *24-25 ("Although Keller Williams is not alleged to have made

any statements directly to Hayhurst, it is not required to do so. Rather, its

manifestations must be 'traceable' to it even if it did not make them directly to

Hayhurst. And, its manifestations 'may take many forms'.").

Similarly, with regard to ratification, Defendants knowingly accepted the

benefits of the illegal calls made to numbers on the National Do Not Call Registry

that they knew were made *and obtained purported consent for with respect to the

follow-on text messages*. Defendants were directly involved in the calls by getting

*exactly* what was intended from the calls—the opportunity for Current Energy and Mr. Adams (and not anybody else) to have Current Energy's services promoted to potential new customers, like the Plaintiff. *See, e.g.*, *Aranda v. Caribbean Cruise Line, Inc.*, 179 F.Supp. 3d 817, 833 (N.D. Ill. 2016) (sellers ratified telemarketers' conduct by accepting the benefits of the unlawful calls in TCPA case); *Keim v. ADF Midatlantic, LLC*, 2015 WL 11713593, at *8 (S.D. Fl. 2015) (allegations sufficient to state a claim where seller accepted the benefits of the conduct by having text messages sent on its behalf to phone numbers obtained on its behalf); *Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.*, 2018 U.S. Dist. LEXIS 132078 (N.D. Cal. 2018) (a reasonable jury could find defendant liable on ratification theory where "Alarm.com knew of Alliance's allegedly illegal telemarketing conduct and accepted the benefits therefrom").

The importance of Mr. Adams' statements to proving apparent authority and ratification in this case cannot be understated. The Defendants eschew actual argument on this point and brush off the Plaintiff's allegations while failing to address why Mr. Adams stated that he was with Current Energy and touted Current Energy's services in the plural. Mr. Adams has moved to dismiss here, but his failure to explain himself speaks volumes. This failure to do is especially damning for Current Energy's claims that it did not manifest apparent authority or ratification over Adams because under the TCPA, consent must be obtained in the

name of the *specific seller*—i.e., the company (like Current Energy) whose product is being sold. *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 at ¶33 (2012). It follows that if there is nothing violative about Mr. Adams' text messages because they were consensual messages sent after the Plaintiff expressed interest in Current Energy, as Current Energy claims in its motion, then Mr. Adams necessarily obtained legally requisite consent on behalf of Current Energy, thus demonstrating apparent authority and ratification. If Adams (or any other third party, for that matter) were not acting as an agent, that party would not be obtaining any legally cognizable valid consent under the TCPA.

As a result, Plaintiff sufficiently alleges Defendants' vicarious liability based on apparent authority and ratification based on manifestations traceable to and benefits derived directly by both Defendants, including in the course of Plaintiff's later investigation.

## CONCLUSION

This Court must deny Defendants' motion to dismiss in its entirety. Alternatively, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to amend to correct the deficiencies or permit discovery as necessary and reserve other determinations properly the subject of the jury.

Dated: January 7, 2025

Respectfully submitted,

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
PA Bar #333687 (*Pro Hac Vice*)
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned certifies that this memorandum of points and authorities complies with the type-volume limitation of L.R. 11-6.1. This certification is made relying on the word count of the word-processing system used to prepare the document. The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,981 words, which complies with the word limit of L.R. 11-6.

DATED this 7th day of January, 2025.


  */s/ Andrew R. Perrong*
Andrew R. Perrong

## CERTIFICATE OF SERVICE

I hereby certify that, on January 7, 2025, I caused the foregoing to be electronically filed with the Clerk using the CM/ECF system, which will send notification of such filing to all counsel of record.


  */s/ Andrew R. Perrong*
Andrew R. Perrong