MICHAEL A. DiNARDO (#216991)
(mdinardo@yklaw.us)
YK LAW, LLP
445 S. FIGUEROA ST, SUITE 2280
LOS ANGELES, CA, 90071
Office: 213-401-0970 x1008

JOHN D FITZPATRICK (Pro Hac Vice)
(jfitzpatrick@cunninghamdalman.com)
CUNNINGHAM DALMAN, P.C.
321 SETTLERS ROAD
HOLLAND, MI 49422-1767
Office: 616-392-1821

Attorneys for Defendants CURRENT
ENERGY LLC and KEVIN ADAMS

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIRYAM ABITBOL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CURRENT ENERGY LLC AND KEVIN ADAMS<br><br>Defendants. | Case No. 2:24-cv-08132-FLA-BFM<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br><u>Hearing</u><br>**Date: January 31, 2025**<br>**Time: 1:30 PM**<br>**Courtroom: 6B**<br>**Hon Fernando L. Aenlle-Rocha**<br><br>**Complaint Served: Sept 26, 2024**<br>**Trial Date: None Set** |

# INTRODUCTION

Contrary to Plaintiff's blanket statement, the Court is not "required" to "credit" the conclusory allegations that she now summarizes as "Defendants directly placed the calls using a fake name." (ECF 25, Page ID 136.) Plaintiff's claim that the Defendants initiated calls to her is comprised of guesswork based on her mischaracterization of statements from Mr. Adams and Mr. Delchop. That a caller transferred a call to Adams who, in turn, promoted services Current Energy provides does not obscure the fact that Plaintiff (like Current Energy) has no idea who transferred the call. For all the rhetoric about improper business practices that Plaintiff's lawyers often encounter, there are no facts that suggest the Defendants placed the calls at issue. Instead, Plaintiff hazards a claim it must have been Current Energy and conjures a conspiracy, promising the details will be sorted in discovery. For the reasons stated in this Reply and the supporting Memorandum, the Court should grant this Fed. R. Civ. P. 12(b)(6) motion and dismiss the single claim in Plaintiff's Complaint.

# ARGUMENT

## I. PLAINTIFF ASSERTS HER CLAIM THAT CURRENT ENERGY AND/OR ADAMS PLACED CALLS TO HER ON CONJECTURE

The entire basis for Plaintiff's theory of direct liability for violation of the TCPA rests on the meaning she superimposes on a statement she alleges Mr. Adams made, paraphrased in this allegation: "[d]uring the second call, she was

transferred to Defendant Kevin Adams who confirmed *they* were in fact calling *from* Defendant Current Energy." (Compl., ¶ 19, ECF 1, Page ID 4.) Plaintiff now explains that Adams' reference to "they" means the "fake" alias of "Energy Efficient" (rather than, say, Adams himself) and the "from" somehow means Current Energy directly placed the call. (ECF 25, Page ID 136.) Plaintiff then devotes several pages of additional briefing to speculation about why that might be the case, *e.g.* "[c]ompanies like Current Energy transfer calls internally between employees all the time, such as from a 'boiler room' sales floor to a 'closer,' which is what Plaintiff suspects happened here." *Id*. at Page ID 137. The conjecture about how companies operate is not factually sufficient to state a claim about the Defendants initiating the calls. Layering hyperbole that the "Defendants deliberately lied" before "Plaintiff caught them red-handed," (*id*. at Page ID 138-139) and "caught their hand in the cookie jar" (*id*. at Page ID 140) as part of a pseudo-criminal enterprise also does not cure Plaintiff's failure to adequately allege how Current Energy placed the calls.

       Other allegations Plaintiff attempts to use as a foundation for the theory that Current Energy directly placed the calls are also immaterial. That Adams contacted the Plaintiff from "his other telephone numbers" and touted Current Energy's work does not "confirm" that Current Energy placed the calls. (Compl., ¶ 20, ECF 1, Page ID 4.) Likewise, Plaintiff mischaracterizes as contradictory Mr. Delchop's

pre-litigation statements that: (1) Adams was an "independent" salesman who brought Current Energy projects; and (2) Current Energy not having knowledge of Adams using Current Energy's name to generate sales. Far from being inconsistent, Delchop's statements confirm that Current Energy was not engaged in whatever marketing efforts may have been employed and was certainly not operating a call center that involved Current Energy employees transferring leads to a "closer." As the Court can glean from the statements Plaintiff attributes to Mr. Delchop, Current Energy has nothing to obscure here because it has no idea what independent salespeople such as Mr. Adams may say to prospective customers or, for that matter, how he gains contact with them.

Direct liability under the TCPA applies only to persons or entities that "make" or "initiate" calls in violation of the TCPA and its implementing regulations. *Golan v. FreeEats.com, Inc.,* 930 F.3d 950, 960, (2019); *Lucas v. Telemarketer*, 2019 WL 3021233 (6th Cir. May 29, 2019). The FCC has concluded that "a person or entity 'initiates' a telephone call when it takes the steps necessary to *physically place* a telephone call, and generally does not include persons or entities, such as third-party retailers, that might *merely have some role*, however minor, in the causal chain that results in the making of a telephone call." *In re Joint Petition filed by Dish Network, LLC*, 2013 WL 1934349, 28 F.C.C. Rcd. 6574, 6583 ¶ 26 (emphasis supplied). Thus, direct TCPA liability does not attach unless

Plaintiff plausibly alleges that Current Energy or Adams themselves physically initiated the calls to the Plaintiff's residential number – making use of a call that connected an independent salesperson to an unidentified non-party caller is not sufficient. "Merely alleging that [a defendant] 'made' or 'initiated' [a] call is not sufficient to allege a [direct] TCPA [liability] claim." *Frank v. Cannabis & Glass, LLC*, 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019).

Plaintiff relies heavily on *Stemke*, where plaintiff alleged that defendant engaged in telemarketing activities, called the plaintiff on several occasions identifying themselves as defendant, and, upon investigation by calling the phone numbers from which the alleged violating calls originated, plaintiff's attorney reached defendant. *Stemke v. Marc Jones Constr., LLC*, No. 5:21-CV-274-30PRL, 2021 WL 4340424, at *2–3 (M.D. Fla. Sept. 23, 2021). Based on these facts, defendant's motion to dismiss was denied because plaintiff had alleged sufficient facts to meet the burden of proof in their pleadings. In direct contrast to those facts, Plaintiff has not alleged that Defendants participate in telemarketing campaigns, affirmatively states that the caller did *not* identify themselves as either Defendant, and most importantly, does not allege that Plaintiff was connected to either Defendant by calling the numbers she has identified as the Caller IDs of the offending phone calls.

Plaintiff also missteps by drawing attention to *Abramson*, in which the Court initially granted a Rule 12 motion to dismiss the initial complaint, surrounding a call that eventually led to an agent who claimed to be associated with the defendant, Josco Energy. The Court concluded that the opening iteration of that complaint "at best suggest[ed] that the caller had some connection to Defendant and that Defendant stood to benefit from the call" and determined that "such facts, even if true, [we]re not sufficient on their own to establish Article III standing or TCPA liability." *Abramson v. Josco Energy USA, LLC*, No. 2:21-cv-1322, 2022 U.S. Dist. LEXIS 237792, at *4 (W.D. Pa. Aug. 1, 2022). Plaintiff then amended the complaint, pleading detailed facts regarding: (i) the agent's control over the calling system; (ii) the automated voice stating the defendant's name and phone number; and (iii) alleged the agent was an employee of the defendant with access to defendant's propriety systems. *Id.* at *5. Acknowledging those supplemental allegations the court in *Abramson* concluded plaintiff had stated a plausible claim. The present allegations align far more closely with the first iteration of the complaint in *Abramson*, not the second.

Likewise, in *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017), the court deemed it appropriate to proceed to discovery after rejecting defenses focused on standing issues (while dismissing a

claim based on vicarious liability.) The challenge to the pleading that Defendants mount here was not addressed in *Cunningham*.

Plaintiff unpersuasively attempts to distinguish the authority upon which Defendants rely on the inadequacy of the pleading on the Defendants directly placing calls, but does not do so in a meaningful manner. *See, e.g., Golan v. FreeEats.com, Inc.,* 930 F.3d 950, 2019 U.S. App. LEXIS 21015, *1-800 Contacts, Inc. v. Lens.Com, Inc.,* 722 F.3d 1229, 2013 U.S. App. LEXIS 14368. *Panacci v. A1 Solar Power, Inc.*, 2015 U.S. Dist. LEXIS 77294. Plaintiff's claim rises and falls on the adequacy of the facts alleged in support of the theory that Current Energy and Adams are, on a direct basis, liable for calls placed by an unidentified caller. Plaintiff acknowledges the same by summarizing: "[t]he Plaintiff here does not plead the intent of some third party to refer the call or lead to the Defendant. Here, the Plaintiff pleads that the Defendant *itself* placed the calls for its own benefit, as confirmed through the subsequent text message conversations." (ECF No. 25, Page ID 147.) The problem with that summary is the subsequent communications have no bearing on the issue of Current Energy placing the calls at issue; and Mr. Delchop's statements regarding the independence of Mr. Adams (Compl. at ¶ 22, ECF 1, Page ID 5) militate against the conspiracy theory Plaintiff fabricates in the Response about the Defendants working collaboratively to hide the source of the calls.

## II.     PLAINTIFF INADEQUATELY PLEADS VICARIOUS LIABILITY

Defendants addressed vicarious liability in the memorandum supporting their motion to dismiss, perhaps unnecessarily, in that it is difficult to discern such a claim in the Complaint. Plaintiff cannot avoid dismissal of the pending claim she alleges for direct TCPA liability by foreshadowing claims for vicarious liability in the response brief. "New allegations contained in opposition to motion to dismiss are irrelevant for Rule 12(b)(6) purposes." *Spindler v. City of L.A.*, No. CV 17-250-JLS(E), 2018 U.S. Dist. LEXIS 228592, at *21 (C.D. Cal. Apr. 17, 2018); citing *Schneider v. Calif. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Id.*; citing *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 780 F. Supp. 2d 1061, 1075 n.10 (D. Haw. 2011). Within the four corners of the Complaint, Plaintiff does not allege that either Defendant is vicariously liable for the conduct of others. Several courts recognize the principle that where a complaint doesn't allege a theory of liability, a claim cannot be inferred from the facts alleged emphasizing that the court cannot consider allegations contained in plaintiff's response to defendant's motion to dismiss that are not alleged in the complaint. *See, e.g., Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998). Plaintiff did not allege vicarious liability in the Complaint and cannot fabricate the claim now.

1. **<u>Plaintiff fail to sufficiently allege actual authority</u>.**

Even if Plaintiff had alleged vicarious liability, the generic cases Plaintiff cites on agency do not align with the facts of this case. There is no question that common law agency principals apply in TCPA cases, but none of the three avenues Plaintiff references (actual authority, apparent authority, and ratification) establish an agency relationship between Defendants and the caller here.

Seeking to establish actual authority, Plaintiff relies on *Hayhurst v. Keller Williams Realty, Inc.*, No. 1:19-cv-657, 2020 U.S. Dist. LEXIS 128877 (M.D.N.C. July 22, 2020) where the plaintiff alleged: (i) he received calls with a pre-recorded voice identifying the caller as an affiliate of Keller Williams; (ii) Keller Williams provided training and materials to the callers, and (iii) encouraged the use of autodialers. Those facts bear no resemblance to the facts now here. There are no allegations that Plaintiff received a prerecorded call claiming to be an affiliate of either Defendant. She also does not allege that Defendants offered training to the caller encouraging the use of autodialers and recorded messages. Rather, Plaintiff alleges she received a call from an individual who she believed was calling from Energy Efficient and cannot even detail the relationship between Mr. Adams and Current Energy.

Plaintiff also cites *Harrington v. Roundpoint Mortg. Servicing Corp.*, 2017 U.S. Dist. LEXIS 55023 (M.D. Fla. Apr. 10, 2017) but, like *Hayhurst*, it is

obviously dissimilar to the interaction Plaintiff now outlines. The claimant in *Harrington* provided his phone number to defendants by way of a construction contract that was ultimately added to a loan file the defendant acquired and serviced. The holding in *United States v Dish Network* also does not advance Plaintiff's position on actual authority. In *Dish Network*, a complex case in which defendants used several means to market their products, Dish created the "Order Entry Program" to control its indirect marketing, expressly authorizing calls placed by companies selling Dish products. *United States v. Dish Network LLC,* 256 F. Supp. 3d 810 (C.D. Ill. 2017). Plaintiff does not allege the Defendants expressly authorized the callers to do anything. Rather, Plaintiff alleges that Defendants *are* the callers. Plaintiff fails to point to one case where actual authority is established on facts similar to those now alleged.

   2.   **Plaintiff also does not sufficiently allege apparent authority.**

Concerning apparent authority, *In re Fresh & Process Potatoes Antitrust Litigation,* merely recites non-controversial agency language with claims markedly different that the claims Plaintiff alleges. *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 2011 U.S. Dist. LEXIS 138777. Plaintiff then re-cites *Hayhurst*, where defendant had actually trained the callers on the use of autodialers and the court relied upon the training as a means to establish agency. Plaintiff neither cites a case on point for apparent authority nor identifies allegations that

might support an apparent authority, *i.e.* that Plaintiff believed the caller had authority to act on behalf of Defendants *and* that belief is traceable to Defendant's manifestations. Restatement (Third) of Agency § 2.03.

In a final attempt to establish agency, Plaintiff moves on to ratification citing first, *Aranda v Caribbean Cruise Line*, where defendants knew of the call campaign, were aware that some of the calls were potentially in violation of the TCPA, and knowingly accepted the business that flowed from the campaign. *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 2016 U.S. Dist. LEXIS 51704. Next, Plaintiff cites *Henderson v United Student Aid Funds*, where defendant, owner of billions of dollars in student debt, hired companies to service the loans and those companies, in turn, hired debt collection callers. The defendant there both reviewed the debt collectors' calling practices *and* received the benefit of the collections. *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068 (9th Cir. 2019). The Ninth Circuit concluded that even these facts did not give rise to an agency relationship based on ratification because the defendant, upon review of the calling practices, disapproved of the practices that violated the TCPA.

Plaintiff's citation to *Keim* is likewise unavailing because, in that case, the defendants hired the alleged bad actors, were aware of their actions, and accepted the benefits of the campaigns. *Keim v. ADF Midatlantic, LLC*, 2015 U.S. Dist. LEXIS 159070 (S.D. Fl. 2015). Finally, the reliance on *Abante* is misplaced

because the defendant both knew of the alleged illegal telemarketing conduct and accepted the benefits of the campaign. *Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.*, 2018 U.S. Dist. LEXIS 132078 (N.D. Cal. 2018). While these cases are not factually on point, Plaintiff manages to flag the common principle: to find liability based on ratification, it is critical for the defendants to have accepted the actual benefits of the bad actor's conduct. Plaintiff does not allege Defendants actually benefitted from the calls at issue, but suggests that a mere opportunity to benefit is enough. Yet, there are no cases cited where the mere opportunity to benefit from the actions of a purported agent establish ratification of the agents' actions on behalf of the principal. Here, the only outcome of the callers' actions was litigation.

Thus, Plaintiff provides no facts to support her conclusions that Current Energy had an agency relationship with any party, including Mr. Adams, brought about by controlling these a calling campaign. Instead, Plaintiff merely concludes that must have a call center in place to make the calls at issue because that is a common practice in the industry.

## **CONCLUSION**

For the reasons set forth above, Defendants Current Energy and Kevin Adams under Fed. R. Civ. P. 12, respectfully move this Court to: (1) dismiss Count I of the pending Complaint; and (2) grant such further relief as is just.

Dated: January 17 2025

Respectfully Submitted,

By: /s/ Michael A DiNardo
Michael A. DiNardo, Esq.
YK LAW LLP

John D Fitzpatrick, Esq. (Pro Hac Vice)
CUNNINGHAM DALMAN, P.C.

Attorneys for Defendants Current Energy, LLC and Kevin Adams

### CERTIFICATE OF COMPLIANCE [L.R. 11-6.2]

The undersigned, counsel of record for Current Energy, LLC and Kevin Adams, certifies that this brief contains 2,614 words, which complies with the word limit of this Court's Standing Order of October 4, 2024, p. 6.

Dated: January 17, 2025

/s/ Michael A. DiNardo
Michael A. DiNardo

### CERTIFICATE OF SERVICE

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served by electronic mail, facsimile transmission and/or first-class mail on this same date.

/s/ Michael A. DiNardo
Michael A. DiNardo